James W. McCarthy, Esq. City Attorney, Oswego
You have asked whether a city may adopt legislation that would restrict placement of pornographic materials to areas in stores where minors would not be likely to see such matter.
The First Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, safeguards freedom of speech and of the press. The guarantees of Article I, section 8 of the New York State Constitution of freedom of speech and of the press are also intended to secure to individuals the right to express and disseminate their views without governmental interference (People v Ferber,57 N.Y.2d 256, 259 [1982]).
The issue at hand is whether an ordinance that restricts display of materials to minors infringes upon constitutionally protected speech of minors or adults.
It should first be determined whether the material to be restricted from display is protected speech under the First Amendment. Obscenity, properly defined, is beyond the protection of the First Amendment (Millerv California, 413 U.S. 15 [1973]). The United States Supreme Court has announced its most recent standards for isolating pornography from expression protected by the First Amendment in Miller v California and has set forth its definition in a three-part test, as follows:
 "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appealed to the prurient interests; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value" (Miller, supra, p 24).
The obscenity regulation must meet the Miller standard in order to be constitutionally sound. An ordinance intended to regulate obscenity must also be carefully limited even when directed at the protection of children. However, a state or municipality may adopt more stringent controls on materials available to youth than are applicable to adults. The United States Supreme Court stated in Erznoznik v City ofJacksonville (422 U.S. 205 [1975]):
 "It is well settled that a State or municipality can adopt more stringent controls on communicative materials available to youths than on those available to adults * * * Nevertheless, minors are entitled to a significant measure of First Amendment protection * * * and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." (Citations omitted.)
Under the three-part Miller standard, the portrayal of nudity alone would not be sufficient to justify a finding of obscenity. In Erznoznik, the Court cautioned that under any test of obscenity as to minors, not all nudity would be proscribed, and that to be obscene, such expression must be erotic in some significant way (Erznoznik, supra, p 213, n 10).
The concept of obscenity or unprotected matter does not remain the same under all circumstances, but may vary according to the group to which the questionable material is directed (Bookcase, Inc. v Broderick, 18 N.Y.2d 71
[1966]). Therefore, special standards, more stringent and restrictive, may be embodied in legislation aimed at controlling dissemination of pornographic materials to minors than in regulations dealing with adults (Ginsberg v New York, 390 U.S. 629 [1968]). In Ginsberg, the United States Supreme Court held it constitutional to restrict the sale of "girlie magazines" to minors, where the magazines contained defined forms of sexually oriented material even though such material was not obscene as to adults.
The ordinance in Ginsberg prohibited distribution of materials "harmful to minors", and defined this phrase as material that (1) appealed to the prurient interest of minors; (2) was patently offensive to what the adult community believed was suitable for minors; and (3) was utterly without social importance for minors (ibid.). This three-part definition was adopted from the United States Supreme Court's then most recent statement of the elements of obscenity (Memoirs v Massachusetts, 383 U.S. 413
[1966]).
Presumably, today an ordinance restricting display of materials harmful to minors would have to define the restricted material according to theMiller test as applied more stringently to minors. The Supreme Court has not yet decided upon the effect that the Miller obscenity test will have on the variable obscenity formulation of Ginsberg (see Erznoznik, supra,
p 213, n 10). The Tenth Circuit, however, has stated that use as to minors of the Miller obscenity test in a city ordinance prohibiting promotion of sexually oriented material did not render the ordinance unconstitutionally infirm (M.S. News Co. v Casado, 721 F.2d 1281 [10th Cir, 1983]).
The New York Appellate Division affirmed a decision declaring a Buffalo city ordinance unconstitutional in that it banned the display of sexually oriented material not obscene as to either minors or adults (Calderon vCity of Buffalo, 61 A.D.2d 323 [4th Dept, 1978]). The Appellate Division stressed that:
 "[w]hile enactment of such legislation is within the authority of the State, nevertheless it is essential that legislation aimed at protecting children from allegedly harmful expression — no less than legislation enacted with respect to adults — be clearly drawn and that the standards adopted be reasonably precise so that those who are governed by the law and those that administer it will understand its meaning and application. It is equally important that such legislation be drawn so as not to bring about the suppression of the sale to adults of material that is, in fact, constitutionally protected." (Ibid.)
Although the ordinance in the Calderon case was struck down, the court in dictum stated:
 "In holding these provisions unconstitutionally broad and vague, we nevertheless reaffirm our support for the exigent interest of localities throughout the State and Nation in preventing the dissemination of material deemed harmful to children." (Ibid.)
The ordinance provisions in Calderon were related to the sale and exhibition of indecent materials to minors and prohibited the display of sexually explicit materials, but contained no requirement that the proscribed materials be harmful to minors. Also the ordinance provisions were constitutionally deficient in that they failed to define the materials proscribed with sufficient clarity and specificity (ibid.).
The Appellate Division supported the legitimate state interest in protecting children from the "onslaught of sexually offensive material". In order to pass constitutional muster, however, the court stressed that the ordinance must provide a clear definition of the materials to be restricted (ibid.).
The Tenth Circuit has recently dealt with an ordinance restricting the display of materials harmful to minors (M.S. News v Casado, supra). TheCasado court upheld the challenged ordinance noting that it prohibited only the display of material "harmful to minors" under the Miller
obscenity test (id., p 1289). The court stated that the ordinance had a clear and acceptable standard that would permit sale or distribution to adults of such materials deemed harmful to minors (id., p 1288). Also, the ordinance reasonably defined material harmful to minors (ibid.). Further, while compliance with the statute would to some degree restrict viewing by adults of material that is protected by the Constitution, the court found that the restriction was reasonable (id., pp 1288-1289).
We note that section 245.11 of the Penal Law makes it a class A misdemeanor publicly to display offensive sexual materials in such a way that it is visible from or in any public street or thoroughfare. Regarding the constitutional implications of this section, the Governor's approval memorandum noted that: "Since the displayer retains his right to display and sell such materials inside his premises, subject only to thelaws of obscenity, the regulation * * * does not infringe upon hisFirst Amendment freedoms." (Memorandum 63, June 25, 1971 [emphasis added].)
We conclude that while minors are entitled to a significant measure ofFirst Amendment protection, a narrowly drawn ordinance restricting display of materials obscene as to minors does not abridge theirFirst Amendment rights.